# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARKEITH D. PHIPPS, <br><br> Defendant. | Case No. 17-CR-28-JPS <br><br> **ORDER** |

**1. BACKGROUND**

Defendant filed a motion seeking compassionate release. (Docket #26). After this Court referred this matter to Federal Defender Services of Wisconsin, Inc. ("FDS") for review, FDS informed the Court that it would file a supplement to Defendant's motion. (Docket #27, #28). In December 2020, FDS submitted its supplement and a motion to seal some of the exhibits thereto. (Docket #37, #38, #39). Shortly thereafter, the Government indicated that it would not be filing a brief in opposition to Defendant's motion and FDS's supplement, leaving resolution of this matter to the Court's discretion. (Docket #40). FDS subsequently filed a letter with the Court indicating that it would not be filing a reply brief. (Docket #41). Having reviewed these submissions, the Court will grant Defendant's motion for compassionate release.

**2. FACTS**

In April 2017, Defendant pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Docket #11). The Court sentenced Defendant to a term of 54 months of imprisonment, which was below the applicable Sentencing Guideline

range. (Docket #22). The Court ordered that Defendant's first 24 months of incarceration were to run concurrent with his state sentence. (Docket #24 at 2). Thereafter, Defendant was to serve the remaining 30 months in federal custody. (*Id.*) Defendant has been in federal custody since November 19, 2019 and, prior to that date, had been in state custody for over three years. (Docket #37 at 4). Defendant is currently incarcerated at Federal Medical Center Butner ("FMC Butner"),[1] an administrative security federal medical center located in Butner, North Carolina.[2] Although Defendant's tentative release date is December 29, 2021, his attorney avers that Defendant "will also get some time at a halfway house placement," and thus, "a reasonable estimate of his release to a halfway house would be sometime in the summer of 2021." (Docket #37 at 24).

Currently, at FMC Butner, there is one confirmed active inmate case of COVID-19 and ten confirmed staff cases.[3] In total, the Bureau of Prisons reports that there has been one inmate death at FMC Butner and a total of 160 inmates have recovered from the virus.[4] Defendant's counsel also refers to the presence of the coronavirus at the larger Butner Federal Correctional Complex, described as "a sprawling compound of five prisons," which consists of FMC Butner (the medical center), two medium security prisons,

---

[1] Fed. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Jan. 21, 2021).

[2] Fed. Bureau of Prisons, FMC Butner: An Administrative Security Federal Medical Center, https://www.bop.gov/locations/institutions/buh/ (last visited Jan. 21, 2021).

[3] Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Jan. 21, 2021).

[4] *Id.*

a low security unit, and a minimum security camp.[5] Previously, in "June 8, 2020, the FBOP reported 19 inmate deaths and 664 active inmate and staff infections" throughout the entire Butner complex. *Hallinan v. Scarantino*, 466 F. Supp. 3d 587, 596 (E.D.N.C. 2020).

Defendant is at FMC Butner due to his medical conditions. He is considered a "Care Level 4" inmate, and thus, requires services available only at a BOP Medical Referral Center. (Docket #37 at 7). Care Level 4 inmates are those whose "functioning may be so severely impaired as to require 24-hour skilled nursing care or assistance." (*Id.*) Defendant requires such assistance due to the presence of a large tumor that "completely occupies the spinal canal with compression of numerous distal nerve roots." (*Id.* at 7–8). According to Defendant's medical records, in 2008 Defendant started experiencing back pain and numbness of his right leg, and he had trouble sleeping as a result of the pain. (*Id.* at 5). Both the Wisconsin Department of Corrections and the BOP have recognized Defendant's need for surgery to remove the mass and to conduct a biopsy in order to properly diagnose it. (*Id.* at 5–9). However, Defendant declined to undergo surgery in early 2020, due to the inherent risk of infection and the lengthy recovery time. (*Id.* at 9). Instead, Defendant "remains firm in his belief that he stands a better chance at limiting complications such as infections while increasing the odds of a good outcome if he has the surgery at a tertiary medical facility and recovers outside of a prison . . . ." (*Id.* at 12).

---

[5]Joseph Neff & Dan Kane, *Freed from Prison, Dead from COVID-19, Not Even Counted: Officials' Missteps at Butner Made It the Deadliest Federal Lockup*, Marshall Project (July 10, 2020, 6:00 AM), https://www.themarshallproject.org/2020/07/10/freed-from-prison-dead-from-covid-19-not-even-counted.

Additionally, Defendant suffers from both hypertension and asthma, for which he receives treatment. (*Id.* at 13). Defendant is also obese, with a Body Mass Index (BMI) measurement of 39.6. (*Id.* at 15). According to the Centers for Disease Control and Prevention ("CDC"), those who suffer from moderate to severe asthma and hypertension *might* be at an increased risk for severe illness from the virus that causes COVID-19.[6] The CDC describes those who are obese (with a BMI of 30 or higher) and the severely obese (BMI of 40 or higher) to have an increased risk of severe illness should they contract COVID-19.[7]

### 3. LEGAL STANDARD

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy

---

[6]Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Jan. 21, 2021).

[7]*Id.*

statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No. 1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially

> diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* §1B1.13 n.1.(A)(ii).

The Court will also consider whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). *Id.* § 1B1.13(B)(2).

Additionally, prior to modifying a term of imprisonment, the Court must evaluate the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

### 4. ANALYSIS

Defendant has exhausted his administrative remedies. (Docket #37 at 21–22). Therefore, the Court determines whether he has presented extraordinary and compelling reasons warranting his release. This Court held that the outbreak of COVID-19, together with a defendant's underlying medical conditions that place the defendant at "high risk" should he contract the disease, establish an extraordinary reason warranting release. *See, United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). According to the CDC, Defendant's nearly severe obesity puts him at a high risk of severe illness

should he contract the virus, and his other two conditions, asthma and hypertension, have the potential to increase that risk.

Further, Defendant is in dire need of spinal surgery to both ease his pain and diagnose his large tumor. Defendant's tumor caused the BOP to designate him as a "Care Level Four" inmate, i.e., someone who is largely incapable of providing self-care due to his medical condition. The Court finds that Defendant's imminent need for surgery and inability to care for himself, in conjunction with the aforementioned conditions that actually or could increase his risk should he contract COVID-19, present extraordinary and compelling reasons warranting his release. *See also United States v. Almontes*, No. 3:05-cr-58 (SRU), 2020 WL 1812713, at *5–*7 (D. Conn. Apr. 9, 2020)(finding that the defendant, who urgently needed spinal surgery and had begun to lose the ability to care for himself, had established an extraordinary and compelling reason warranting release); *United States v. Murphy*, Docket No. 2:13-cr-00115-NT, 2020 WL 4606416, at *4 (D. Me. Aug. 11, 2020)(finding that Care Level 4 inmate with a "constellation of conditions that increase his risk of serious illness, in conjunction with BOP's postponement of [his] shoulder surgery due to the pandemic" provided "other" extraordinary and compelling reasons warranting his release).

Finally, the Court will consider the § 3553(a) sentencing factors and whether Defendant's release presents a danger to others or the community in light of 18 U.S.C. § 3142(g). As earlier noted, this Court sentenced Defendant to 54 months of imprisonment for being a felon in possession of a firearm. Defendant spent nearly three years in state prison and has been incarcerated in the BOP since November 2019. He has less than a year remaining on this sentence. The Court agrees that Defendant's incarceration reflects the seriousness of his offense, promotes respect for the

law, has protected the public, and has provided adequate deterrence to Defendant. Further, the Court finds that due to Defendant's imminent surgery and lengthy recovery therefrom, Defendant does not present a danger to others and the community. The Court notes that, after his recovery, Defendant intends to assist his mother by caring for others at her adult family care business. Lastly, the Court heeds the Government's submission, in which it states that it does not oppose Defendant's release.

5. **CONCLUSION**

The Court finds that Defendant has exhausted his administrative remedies and presented an extraordinary and compelling reason warranting his release. After considering both the § 3553(a) factors and § 3142(g), the Court will grant Defendant's motion for compassionate release (Docket #26) pursuant to § 3582(c)(1)(A). Defendant's sentence shall be reduced to time served followed by a term of three years of supervised release, which remains subject to each of the conditions set forth in the Court's original judgment, dated September 12, 2017 (Docket #24).

Accordingly,

**IT IS ORDERED** that Defendant Markeith D. Phipps's motion for compassionate release (Docket #26) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Markeith D. Phipps's term of imprisonment be and the same is hereby reduced to **time served**;

**IT IS FURTHER ORDERED** that this Order is **STAYED** for up to fourteen (14) days in order to complete any of the following steps, as may become both appropriate and necessary: make appropriate travel arrangements, verify a residence, and establish a release plan. If these items have already been addressed, then Defendant must be released promptly. If more than fourteen days are needed to make appropriate travel

Page 8 of 9
Case 2:17-cr-00028-JPS   Filed 01/22/21   Page 8 of 9   Document 42

arrangements, verify a residence, or establish a release plan, the parties shall immediately notify the Court and show cause why the deadline should be extended;

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to release Defendant Markeith D. Phipps from incarceration in accordance with this Order and pursuant to the amended judgment, which follows; and

**IT IS FURTHER ORDERED** that Defendant Markeith D. Phipps's motion to seal (Docket #38) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 22nd day of January, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge